ESTADO LIBRE ASOCIADO DE PUERTO RICO
TRIBUNAL GENERAL DE JUSTICIA
TRIBUNAL DE APELACIONES
**PANEL ESPECIAL**

| | | |
|---|---|---|
| RENÉ EMMANUEL MORENO JIMÉNEZ<br>DEMANDANTE(S)-RECURRIDA(S)<br><br>V.<br><br>FIRST BANCORP<br>DEMANDADA(S)-RECURRIDA(S)<br><br>FELICIANO COTTO JOVET Y SUCN. FELÍCITA GONZÁLEZ BÁEZ, COMPUESTA POR VILMARIE COTTO GONZÁLEZ; HERIVAN COTTO GONZÁLEZ Y FELICIANO COTTO JOVET Y VALENRY J. RIVERA SANTIAGO Y LINDA GALINDO GONZÁLEZ, POR SÍ Y EN REPRESENTACIÓN DE LA SOCIEDAD LEGAL DE GANANCIALES QUE COMPONEN<br>CO-DEMANDADA(S)-PETICIONARIA(S) | **KLCE202400526**<br><br>**cons.** | *CERTIORARI*<br>procedente del Tribunal de Primera Instancia, Sala Superior de **BAYAMÓN**<br><br>Caso Núm.<br>**BY2019CV07004 (502)**<br><br>Sobre:<br>Acción Civil, Incumplimiento de Contrato; Daños y Perjuicios |
| RENÉ EMMANUEL MORENO JIMÉNEZ<br>DEMANDANTE(S)-RECURRIDA(S)<br><br>V.<br><br>FIRST BANCORP<br>DEMANDADA(S)-RECURRIDA(S)<br><br>FELICIANO COTTO JOVET Y SUCN. FELÍCITA GONZÁLEZ BÁEZ, COMPUESTA POR VILMARIE COTTO GONZÁLEZ; HERIVAN COTTO GONZÁLEZ Y FELICIANO COTTO JOVET Y VALENRY J. RIVERA SANTIAGO Y LINDA GALINDO GONZÁLEZ, POR SÍ Y EN REPRESENTACIÓN DE LA SOCIEDAD LEGAL DE GANANCIALES QUE COMPONEN<br>CO-DEMANDADA(S)-PETICIONARIA(S) | **KLCE202400631** | *CERTIORARI*<br>procedente del Tribunal de Primera Instancia, Sala Superior de **BAYAMÓN**<br><br>Caso Núm.<br>**BY2019CV07004 (502)**<br><br>Sobre:<br>Acción Civil, Incumplimiento de Contrato; Daños y Perjuicios |

Número Identificador: SEN2026_____

Panel integrado por su presidenta, la Juez Lebrón Nieves, la Juez Barresi Ramos y la Jueza Santiago Calderón.

*Barresi Ramos*, juez ponente

### S E N T E N C I A

En San Juan, Puerto Rico, a 5 de mayo de 2026.

Comparece ante este Tribunal de Apelaciones, el señor **FELICIANO COTTO JOVET** (señor **COTTO JOVET**) y la **SUCESIÓN FELÍCITA GONZÁLEZ BÁEZ** (**SUCN. GONZÁLEZ BÁEZ**) mediante *Certiorari* incoado el 14 de mayo de 2024.[1] En su recurso, solicitan que revisemos la *Resolución* decidida el 12 de abril de 2024 por el Tribunal de Primera Instancia (TPI), Sala Superior de Bayamón.[2] Mediante la referida determinación, se declaró no ha lugar la *Moción de Sentencia Sumaria Parcial* presentada el 8 de junio de 2023 por el señor **RENÉ E. MORENO JIMÉNEZ** (señor **MORENO JIMÉNEZ**), al igual que la *Moción de Sentencia Sumaria* presentada el 12 de junio de 2023 por **FIRSTBANK DE PUERTO RICO** (**FIRSTBANK**).

La institución **FIRSTBANK** comparece mediante *Certiorari* interpuesto el 6 de junio de 2024.[3] Igualmente, nos solicita que revisemos la *Resolución* dispuesta el 12 de abril de 2024 por el Tribunal de Primera Instancia (TPI), Sala Superior de Bayamón.

Ante el hecho de que estos recursos provienen del mismo caso ventilado ante el Tribunal de Primera Instancia (TPI), Sala Superior de Bayamón, ordenamos la consolidación de los casos **KLCE202400526** y **KLCE202400631**. Todos los asuntos continuarán tramitándose bajo el caso número **KLCE202400526** por ser el de mayor antigüedad.

Exponemos el trasfondo fáctico y procesal que acompaña a la presente controversia.

---

[1] Se le asignó el alfanumérico: **KLCE202400526**.
[2] Dicho dictamen judicial fue notificado y archivado en autos el 17 de abril de 2024. Apéndice del *Certiorari* (**KLCE202400631**), págs. 406-427.
[3] Se le asignó el alfanumérico: **KLCE202400631.**

**- I -**

El 3 de diciembre de 2019, el señor **MORENO JIMÉNEZ** presentó una *Demanda* sobre incumplimiento de contrato, y daños y perjuicios.[4] Arguyó, entre otras cosas, que los señores **COTTO JOVET** y **FELÍCITA GONZÁLEZ BÁEZ** (ahora **SUCN. GONZÁLEZ BÁEZ**) habían anunciado en Clasificados OnLine la venta de una propiedad, de dos (2) plantas, situada en la Calle Acrópolis #P-19, Reparto Apolo, en el municipio de Guaynabo. Expuso que la propiedad fue tasada por la suma de $156,000.00. Aclaró que para facilitar la adquisición de la residencia obtuvo un préstamo hipotecario por la suma de $150,000.00 con la institución financiera **FIRSTBANK** y aportó $9,932.23. Alegó que el 30 de julio de 2019, se otorgó la Escritura número 108 sobre *Compraventa* ante el notario Valenry J. Rivera Santiago; y la Escritura número 483 sobre *Primera Hipoteca* ante la notario Griselle Arbona Ramírez.[5] Explicó que, para agosto de 2019, recibió una comunicación del CRIM reclamando una deuda por unos $13,735.41 para el catastro 014-0255-694-12-002 que correspondía a la segunda planta. Precisó que la documentación que le fuese entregada por **FIRSTBANK** menciona el catastro 014-0255-694-12-001 y al constatar ambas escrituras sólo mencionan una estructura de una planta.

El 5 de febrero de 2020, **FIRSTBANK** presentó su *Contestación a Demanda* incluyendo sus defensas afirmativas.[6] Más tarde, el 26 de agosto de 2020, **FIRSTBANK** encausó *Demanda contra Tercero* para incluir como tercero demandado a **CAPITAL TITLE SERVICES, INC (CAPITAL TITLE)**.[7] El 9 de

---

[4] Apéndice del *Certiorari* (**KLCE202400631**), págs. 407-427. Dicha *Demanda* fue enmendada en dos (2) ocasiones: el 20 de enero de 2021 y el 7 de diciembre de 2022. Entradas números 103 y 205 del expediente electrónico del Sistema Unificado de Manejo y Administración de Casos (SUMAC-TPI).

[5] Apéndice del *Certiorari* (**KLCE202400631**), págs. 217-228 y 229-258. Se entregaron las llaves de ambas estructuras al señor **MORENO JIMÉNEZ**.

[6] Apéndice del *Certiorari* (**KLCE202400631**), págs. 43- 50. El 22 de julio de 2020, **FIRST BANCORP** y **FIRSTBANK** presentaron *Moción Sometiéndonos a la Jurisdicción del Tribunal, Desestimación y/o Sustitución de Parte* en la cual interpelaron la desestimación de la reclamación contra **BANCORP** y/o su sustitución por **FIRSTBANK**. Apéndice del *Certiorari* (**KLCE202400631**), págs. 51- 79. Ante ello, el 17 de agosto de 2020, se prescribió *Sentencia Parcial* desestimando acción contra **BANCORP** y proveyendo la sustitución de **BANCORP** por **FIRSTBANK.** Apéndice del *Certiorari* (**KLCE202400631**), págs. 81-86.

[7] Apéndice del *Certiorari* (**KLCE202400631**), págs. 91-93. Ello fue autorizado mediante *Orden* provista el 17 de agosto de 2020. Apéndice del *Certiorari* (**KLCE202400631**), pág. 90.

noviembre de 2020, **CAPITAL TITLE** presentó su *Contestación a Demanda Contra Tercero* incluyendo sus defensas afirmativas.[8]

Posteriormente, el 7 de marzo de 2023, **FIRSTBANK** presentó *Contestación a Tercera Demanda Enmendada* conteniendo sus defensas afirmativas.[9]

Luego de varios trámites judiciales, el 8 de junio de 2023, el señor **MORENO JIMÉNEZ** presentó una *Moción de Sentencia Sumaria Parcial*.[10] Sostuvo que no existe controversia sobre el incumplimiento de contrato por parte del señor **COTTO JOVET** y la **SUCN. GONZÁLEZ BÁEZ**; y la negligencia de **FIRSTBANK** en el manejo del caso para otorgar el préstamo hipotecario. Por eso, reclamó la devolución de las sumas pagadas por concepto de opción; el pago del CRIM, más los $150,000.00 del préstamo hipotecario.

El 12 de junio de 2023, **FIRSTBANK** presentó su *Moción de Sentencia Sumaria*.[11] Adujo que **FIRSTBANK** había contratado a Capital Title para efectuar un estudio de título; ante el segundo número de catastro, **FIRSTBANK** requirió un segundo estudio de título en cual surge un derecho de superficie que no aparecía en el primer estudio de título; la negligencia, si alguna, fue por parte Capital Title porque no era previsible para el principal (**FIRSTBANK**); y no debe responder por los actos u omisiones culposas o negligentes del contratista (Capital Title). Al día siguiente, el 13 de junio de 2023, el señor

---

[8] Apéndice del *Certiorari* (**KLCE202400631**), págs. 94- 102.

[9] *Íd*., págs. 113- 120.

[10] Apéndice del *Certiorari* (**KLCE202400631**), págs. 121- 182. Está acompañada de copia de los siguientes documentos: (i) *Primer Interrogatorio y Producción de Documentos*; (ii) *Contrato de Compraventa* fechado 23 de junio de 2019; (iii) *Declaración Jurada* suscrita el 3 de febrero de 2021 por la señora Brenda R. González González; (iv) *Estudio de Título* realizado por Capital Title con fecha de 9 de julio de 2019; (iv) *Revisión de Estudio de Título* realizado por Capital Title suscrito el 9 de julio de 2019; (v) Porción de la Toma de Deposición del señor Jorge Luis González; (vi) Porción de la Toma de Deposición de la señora Marline Reyes Hernández; y (vii) Porción de la Toma de Deposición del señor Joel O. Ríos Cruzado.

[11] Apéndice del *Certiorari* (**KLCE202400631**), págs. 183- 268. Adjuntó copia de los siguientes documentos: (i) *Contrato de Compraventa* con fecha de 23 de junio de 2019; (ii) *Uniform Residential Loan Application* firmada el 24 de junio de 2019; (iii) *Estudio de Título* generado por Capital Title verificada el 9 de julio de 2019; (iv) *Factura* y *Seguro del Estudio de Título* (Fidelity National Title Insurance Company); (v) misiva sobre Préstamo 916569 de 22 de julio de 2019; (vi) *Escritura* número 108 sobre Compraventa ante el notario Valenry J. Rivera Santiago; (vii) *Escritura* número 483 sobre Hipoteca ante la notario Griselle Arbona Martínez; (viii) *Pagaré* de 30 de julio de 2019; (ix) *Declaración Jurada* suscrita el 30 de julio de 2019 por el señor **MORENO JIMÉNEZ**; (X) *Aviso Final* (CRIM) con fecha de 15 de noviembre de 2019; (xi) *Estado de Cuenta* (CRIM) de 15 de diciembre de 2019; (xii) correos electrónicos; y (xiii) *Revisión de Estudio de Título* efectuado por Capital Title.

**COTTO JOVET** y la **SUCN. GONZÁLEZ BÁEZ** presentaron su *Oposición a Solicitud de Sentencia Sumaria y Otros Extremos*.[12] El 29 de junio de 2023, **FIRSTBANK** presentó su *Oposición a Solicitud de Sentencia Sumaria Presentada por la Parte Demandante*.[13] En la misma fecha, el señor **MORENO JIMÉNEZ** presentó *Moción en Relación a Oposición a Sentencia Sumaria y Otros Extremos de los Codemandados Feliciano Cotto y Sucesión Felícita González Báez* en la cual manifestó que habían incumplido con la Regla 36 de las de Procedimiento Civil de 2009.[14] Conjuntamente, el señor **MORENO JIMÉNEZ** presentó *Moción en Relación a Sentencia Sumaria de FirstBank Puerto Rico.*[15]

Después, el 7 de julio de 2023, **CAPITAL TITLE** presentó su *Oposición a Moción de Sentencia Sumaria Presentada por FirstBank* aceptando que confeccionó el estudio de título, pero deben evaluarse los hechos acontecidos desde que el Banco Popular de Puerto Rico ejecutó la hipoteca.[16]

Al tiempo, el 12 de abril de 2024, se pronunció la *Resolución* recurrida. En esta providencia judicial, se decidió que no procedía los petitorios sobre sentencia sumaria y se consignaron las siguientes determinaciones de hechos incontrovertidos:

> 1. Los demandados, Feliciano Cotto Jovet, Felícita González Báez y la sociedad de gananciales que constituían para la fecha de los hechos, eran los titulares de la propiedad sita en la Calle Acrópolis #P-19, Reparto Apolo, Guaynabo, Puerto Rico.

---

[12] Apéndice del *Certiorari* (**KLCE202400526**), págs. 151-156. Están juntados: (i) *Contestación a Requerimiento de Admisiones* dirigido al Banco Popular suscrito el 21 de enero de 2022 por Felicita González Báez; (ii) *Contestación a Requerimiento de Admisiones* dirigido al Banco Popular firmado el 21 de enero de 2022 por Feliciano Cotto Jovet y Felicita Ramos; y *Contestación a Primer Pliego de Interrogatario, Producción de Documentos y Requerimiento de Admisiones* dirigido al señor René Moreno Jiménez juramentado el 21 de enero de 2022 por Felicita González Báez.

[13] Apéndice del *Certiorari* (**KLCE202400631**), págs. 269-367. Tiene anejado copia de los siguientes documentos: (i) *Engagement Letter* y *Tasación* a 2 de julio de 2019; (ii) *Contrato de Compraventa* signada el 23 de julio de 2019; (iii) *Standard Flood Hazard Determination Form*; (iv) *Plot Plan*; (v) *Estudio de Título* llevado a cabo el 9 de julio de 2019 por Capital Title; (vi) Toma de Deposición de la señora Marline Reyes Hernández; y (vii) Toma de Deposición del señor Joel O. Ríos Cruzado.

[14] Entrada núm. 237 del expediente electrónico del Sistema Unificado de Manejo y Administración de Casos (SUMAC-TPI).

[15] Apéndice del *Certiorari* (**KLCE202400631**), págs. 368-369.

[16] Apéndice del *Certiorari* (**KLCE202400631**), págs. 370-405. Está adjuntada copia de los siguientes documentos: (i) *Sentencia* sobre cobro de dinero y ejecución de hipoteca decretada el 25 de septiembre de 2013 en el caso DCD2013-1262; (ii) *Edicto Anunciando Primera, Segunda y Tercera Subasta*; (iii) *Escritura* número 674 sobre Primera Hipoteca otorgada el 24 de septiembre de 2003 ante la notario Corally Veguilla Torres; (iv) *Uniform Residential Appraisal Report* (Tasación) firmada el 12 de marzo de 2003*;* (v) *Contestación a Requerimiento de Admisiones* juramentada el 21 de enero de 2022 por el señor **COTTO JOVET;** y (vi) *Appraisal of Real Property* (Tasación) suscripta el 2 de julio de 2019.

2. Los esposos Cotto-González pusieron a la venta el inmueble, mediante anuncio de *Clasificados Online*, donde lo anunciaron como una propiedad de dos plantas, cinco cuartos y tres baños.

3. Por conducto de la corredora de bienes raíces Brenda R. González, licencia 18,106, contratada por los vendedores, éstos mostraron y ofrecieron ambas plantas de la propiedad al demandante y contrataron con él para la compraventa del mencionado inmueble de dos plantas, en la Calle Acrópolis #P-19, Reparto Apolo, Guaynabo, Puerto Rico.

4. La corredora de bienes raíces cobró comisión por la venta.

5. En el contrato de opción se indicó que se vendía la propiedad, sin hacer mención de que solamente se estaba vendiendo la primera planta. Dicho contrato tampoco mencionó la existencia de un derecho de superficie.

6. A la propiedad del segundo nivel se le realizaron las siguientes mejoras y trabajos de mantenimiento: (a) cambio de piso; (b) pintura interior y exterior; (c) cambio de ventanas en la parte del frente; (d) cambio de gabinetes cocina; (e) cambio de puertas interiores y de entrada; (f) tratamiento de techo; (g) reparación de electricidad; y (h) reparación de plomería.

7. La parte vendedora gestionó una certificación de deuda de mantenimiento de las propiedades fechada 27 de julio del 2019, en la cual la Asociación de Residentes de Ampliación Alto Apolo identificó la propiedad como: "CASA – APARTAMENTOS P-19A Y P-19B". Surge, además, del documento que "la cuota de mejoras es de $500.00 por unidad". Allí se certificó una deuda de $3,950.00 que incluía la cuota por ambas estructuras.

8. A la parte vendedora también le fue indicado por la Sra. Carmen Rita San Miguel, Administradora, que eran dos estructuras separadas, de dueños distintos.

9. La parte vendedora no notificó al demandante ni al banco la información sobre las dos estructuras.

10. El demandante solicitó la tramitación del préstamo hipotecario para la compra con el demandado.

11. El codemandado FirstBank, en su proceso prestatario, realizó la tasación y estudio de título de la propiedad con su personal y/o proveedores de servicios.

12. En la tasación, realizada por un tasador contratado por el banco, se valoraron ambas plantas por la suma de $156,000.00.

13. Para efectos de FirstBank el objeto del contrato siempre fue una propiedad con dos unidades.

14. En el primer estudio de título realizado por Capital, contratista del FirstBank para la transacción, surgió que la estructura consta de una planta. El estudio de título no mencionó la estructura de la planta superior, ni el derecho de superficie a favor de un tercero, a pesar de que ello surgía de las constancias del Registro de la Propiedad, al momento en que se realizó dicho estudio de título. Este documento no fue entregado al demandante sino hasta este proceso judicial.

15. Para la compra de la estructura de dos plantas, el banco concedió un préstamo por [$147,283.00], considerando las medidas de ambas plantas.

16. Al cierre del préstamo, el demandante señor Moreno aportó $10,649.26 pagados a FirstBank.

17. Según declaración de los oficiales del codemandado, FirstBank, conocía que la intención e interés del demandante era adquirir la propiedad por ser una estructura de dos plantas; y también conocía de la incongruencia entre la tasación (dos plantas) y el estudio de título (una planta), según admitieron en las deposiciones tomadas.

18. Específicamente, surgió de la deposición tomada el 1 de abril de 2022 al Sr. Jorge Luis González, empleado de FirstBank como originador de préstamos para la fecha de los hechos:

    a. fue el empleado que originó el caso del demandante;

    b. el demandante le indicó que el inmueble que interesaba adquirir era una "propiedad de dos unidades";

    c. entre los documentos que el empleado verificó estuvo la calificación crediticia del demandante, que arrojó una puntuación de 745;

    d. recibió un correo electrónico del caso, enviado por la Sra. Maritza Santana, Oficial de FirstBank, donde se indicó que el préstamo se refiere a una "propiedad con dos unidades de vivienda"; y

    e. que dicho correo también fue copiado al Sr. Eddie García, Oficial de Cierres, la Sra. Lizaida Santiago, Supervisora del Área de Cierres, y a la Sra. Marline Reyes, Analista de Procesos, entre otros empleados del banco.

19. En FirstBank es un abogado quien revisa y da el visto bueno desde el punto de visto legal, para que se pueda proceder con un contrato hipotecario. La Sra. Marline Reyes Hernández, empleada de FirstBank y procesadora de préstamos hipotecarios, revisa en los documentos para cotejar que la propiedad no tenga diferencia, es decir, que el estudio de título no contradiga el resto de los documentos examinados por ella para otorgar un préstamo.

20. Para la compraventa se otorgó la escritura número 108 el 30 de julio de 2019, ante el notario Valenry J. Rivera Santiago. En la escritura se hizo constar que los vendedores recibieron la suma de $150,000.00. De esa cantidad, $2,000.00 fueron pagados previamente por la opción.

21. Para la hipoteca se otorgó la escritura número 483 el 30 de julio de 2019, ante la notaria Griselle Arbona Ramírez. Dicha notaria fue provista por el codemandado FirstBank.

22. En ninguna de las dos escrituras -de compraventa e hipoteca- se hizo constar el derecho de superficie a favor de un tercero sobre la segunda planta del inmueble.

23. Para la fecha del otorgamiento de la escritura de compraventa, el señor Cotto entregó al demandante las llaves de ambas estructuras.

24. El demandante conoce de que existían dos propiedades separadas al recibir cartas de cobro del CRIM y al entonces corroborar que la escritura de compraventa únicamente mencionó una estructura de una planta.

25. FirstBank tuvo ante su consideración un documento sobre deuda de mantenimiento de la urbanización que establecía la existencia de dos unidades, identificadas como P-19-A y P-19-B.

26. El tercero demandado, Capital, preparó un segundo estudio de título del cual surgió la existencia de un derecho de superficie que se omitió en el primero, que fue el utilizado para el préstamo.

27. De los folios digitalizados de la propiedad que constan en el Sistema Karibe del Registro de la Propiedad en torno a la Finca Núm. 13,298, folio 60, tomo 217 de Guaynabo, Sección Sexta, surge claramente la existencia del derecho de superficie en nueve de sus asientos registrales.

28. El dato sobre la existencia del derecho de superficie fue omitido en las escrituras de compraventa e hipoteca.

29. FirstBank fue negligente al suscribir la hipoteca con el señor Moreno.

30. Los esposos Cotto-González conocían que el inmueble que le vendían al señor Moreno tenía un derecho de superficie y no le indicaron este hecho al comprador.

31. Por los pasados años, el señor Cotto se ha dedicado a la compra y venta de propiedades inmuebles como negocio.

Dispuso que permanecían las siguientes controversias:

1.  ¿A cuánto ascienden los daños causado por la negligencia de FirstBank, al señor Moreno?
2.  Si procede rescindir el contrato de compraventa, suscrito entre el señor Moreno y los esposos Cotto-González, al presente Sucesión González.
3.  Si procede rescindir el contrato de hipoteca suscrito entre FirstBank y el señor Moreno.
4.  Si los esposos Cotto-González, al presente Sucesión González, omitieron al demandante, con intención dolosa o fraudulenta la información sobre el derecho de superficie que existía en la propiedad adquirida.

En desacuerdo, el 2 de mayo de 2024, **FIRSTBANK** presentó una *Solicitud de Reconsideración a Resolución y Determinación de Hechos Adicionales*.[17] Inmediatamente, el 6 de mayo de 2024, se dictaminó *Resolución* declarando no ha lugar la petitoria de reconsideración.[18]

Inconforme, el 14 de mayo de 2024, el señor **COTTO JOVET** y la **SUCN. GONZÁLEZ BÁEZ** acudieron mediante *Certiorari* ante este Tribunal de Apelaciones (**KLCE202400526**). Señalaron el(los) siguiente(s) error(es):

Erró el Honorable Tribunal de Primera Instancia de Bayamón al determinar que los esposos Cotto-González[,] ahora Sucesión González[,] conocían y no le advirtieron al demandante que existía un derecho de superficie en el inmueble objeto del presente caso, aún cuando el propio foro de instancia valida la controversia viva sin resolver sobre ese mismo punto. (página 16 cuarto párrafo de la Resolución recurrida[)].

Erró el Honorable Tribunal de Primera Instancia de Bayamón al hacer las determinaciones de derecho número siete (7); nueve (9); y veinticuatro (24) reconociendo que existía controversias sobre los mismos.

Erró el Honorable Tribunal de Primera Instancia de Bayamón al hacer determinaciones de hechos y derecho sobre los que el propio foro de instancia reconoce que existe controversia (Sección III) de la Resolución.

Erró el Honorable Tribunal de Primera Instancia de Bayamón al señalar que todas las partes estaban regidas por el principio de publicidad del Registro de la Propiedad y solamente determina, arbitrariamente, responsabilidad a los esposos Cotto-González y excusa solamente al demandante por ser lego.

Erró el Honorable Tribunal de Primera Instancia de Bayamón al señalar que no existían partes indispensables que traer al pleito, ver Resolución recurrida a la página 20 último párrafo.

---

[17] Apéndice del *Certiorari* (**KLCE202400631**), págs. 428-449.
[18] *Íd.*, págs. 450-451.

El 17 de mayo de 2024, *prescribimos Resolución* en la cual se le concedió un término de diez (10) días para mostrar causa por la cual no debíamos expedir el auto de *certiorari* y revocar el dictamen impugnado al señor **MORENO JIMÉNEZ** y **FIRST BANCORP**.

Por su lado, el 6 de junio de 2024, **FIRSTBANK** presentó un *Certiorari* (**KLCE202400631**) ante este foro revisor en el cual reseñó el(los) siguiente(s) error(es):

Erró el Honorable Tribunal de Primera Instancia al declarar no ha lugar la Moción de Sentencia Sumaria Parcial de FirstBank por existir controversia sobre hechos esenciales y pertinentes, según Resolución de 17 de abril de 2024 aun cuando la parte demandante no controvirtió los hechos sometidos en su contestación a la solicitud de sentencia sumaria parcial.

Erró el Honorable Tribunal de Instancia al no dar cumplimiento a la Regla 36.3 de Procedimiento Civil.

Erró el Honorable Tribunal de Instancia al determinar negligencia contra FirstBank al no solicitar una certificación registral.

Erró el Honorable Tribunal de Instancia al aplicar incorrectamente el derecho aplicable e interpretar a la inversa la doctrina de contratista independiente y por ello fallando crasamente al determinar su inaplicabilidad.

En tal caso, el 13 de junio de 2024, despachamos *Resolución* en la cual se concedió un plazo perentorio de diez (10) días para mostrar causa por la cual no se debíamos expedir el auto de *certiorari* y revocar el dictamen recurrido al señor **MORENO JIMÉNEZ,** al señor **COTTO JOVET** y a la **SUCN. GONZÁLEZ BÁEZ**. El 1 de julio de 2024, el señor **MORENO JIMÉNEZ** presentó su *Oposición al Recurso de Certiorari y Escrito en Cumplimiento de Orden* en ambos casos.

- II -

- A – *CERTIORARI*

El auto de *certiorari* es un vehículo procesal extraordinario utilizado para que un tribunal de mayor jerarquía pueda revisar discrecionalmente las órdenes o resoluciones interlocutorias decretadas por una corte de inferior

instancia judicial.[19] Por ello, la determinación de expedir o denegar este tipo de recurso se encuentra enmarcada dentro de la discreción judicial.[20]

De ordinario, la discreción consiste en "una forma de razonabilidad aplicada al discernimiento judicial para llegar a una conclusión justiciera".[21] Empero, el ejercicio de la discreción concedida "no implica la potestad de actuar arbitrariamente, en una u otra forma, haciendo abstracción del resto del derecho".[22]

Ahora bien, en los procesos civiles, la expedición de un auto de *certiorari* se encuentra delimitada a las instancias y excepciones contenidas en la Regla 52.1 de las de Procedimiento Civil de 2009.[23] La aludida Regla dispone que solo se expedirá un recurso de *certiorari* cuando, "se recurra de una resolución u orden bajo remedios provisionales de la Regla 56, *injunctions* de la Regla 57 o de la denegatoria de una moción de carácter dispositivo".[24] La Regla 52.1 de las de Procedimiento Civil de 2009 instaura que los recursos de *certiorari* deben tramitarse de conformidad con la ley aplicable.[25] En ese sentido, y a manera de excepción, se podrá expedir este auto discrecional cuando:

> (1) se recurra de decisiones sobre la admisibilidad de testigos de hechos o peritos esenciales;
> (2) en asuntos relacionados a privilegios evidenciarios;
> (3) en casos de anotaciones de rebeldía;
> (4) en casos de relaciones de familia;
> (5) en casos revestidos de interés público; o
> (6) en cualquier situación en la que esperar a una apelación constituiría un fracaso irremediable de la justicia.[26]

Lo anterior constituye tan solo la primera parte de nuestro análisis sobre la procedencia de un recurso de *certiorari* para revisar un dictamen del Tribunal de Primera Instancia. De modo que, aun cuando un asunto esté

---

[19] *Rivera et al. v. Arcos Dorados et al.*, 212 DPR 194 (2023); *Torres González v. Zaragoza Meléndez*, 211 DPR 821 (2023); *McNeil Healthcare v. Mun. Las Piedras I*, 206 DPR 391, 403 (2021).
[20] *Íd.*
[21] *Medina Nazario v. McNeil Healthcare LLC*, 194 DPR 723, 729 (2016).
[22] *Íd.*
[23] 32 LPRA Ap. V, R. 52.1; *Torres González v. Zaragoza Meléndez, supra.*
[24] *Caribbean Orthopedics v. Medshape et al.*, 207 DPR 994, 1004 (2021).
[25] 32 LPRA Ap. V., R. 52.1.
[26] 32 LPRA Ap. V, R. 52.1; *Torres González v. Zaragoza Meléndez, supra*; *McNeil Healthcare v. Mun. Las Piedras I, supra*, pág. 404; *800 Ponce de León v. AIG*, 205 DPR 163 (2020).

comprendido entre las materias que las Reglas de Procedimiento Civil de 2009 nos autorizan a revisar, el ejercicio prudente de esta facultad nos requiere tomar en consideración, además, los criterios dispuestos en la Regla 40 del Reglamento del Tribunal de Apelaciones.[27]

Por otro lado, el examen de los [recursos] discrecionales no se da en el vacío o en ausencia de otros parámetros.[28] Para ello, la Regla 40 de nuestro Reglamento instituye los indicadores a considerar al evaluar si se debe o no expedir un recurso de *certiorari*. A saber:

> (A) Si el remedio y la disposición de la decisión recurrida, a diferencia de sus fundamentos, son contrarios a derecho;
> (B) Si la situación de hechos planteada es la más indicada para el análisis del problema;
> (C) Si ha mediado prejuicio, parcialidad o error craso y manifiesto en la apreciación de la prueba por el Tribunal de Primera Instancia;
> (D) Si el asunto planteado exige una consideración más detenida a la luz de los autos originales, los cuales deberán ser elevados, o de alegatos más elaborados;
> (E) Si la etapa del procedimiento en que se presenta el caso es la más propicia para su consideración;
> (F) Si la expedición del auto o de la orden de mostrar causa no causan un fraccionamiento indebido del pleito y una dilación indeseable en la solución final del litigio; y
> (G) Si la expedición del auto o de la orden de mostrar causa evita un fracaso de la justicia.[29]

Es preciso aclarar, que la anterior no constituye una lista exhaustiva, y ninguno de estos criterios es determinante, por sí solo, para justificar el ejercicio de nuestra jurisdicción.[30] En otras palabras, los anteriores criterios nos sirven de guía para poder determinar de la forma más sabia y prudente si se justifica nuestra intervención en la etapa del procedimiento en que se encuentra el caso.[31] Ello, pues distinto al recurso de apelación, este Tribunal posee discreción para expedir el auto de *certiorari*.[32] La delimitación que imponen estas disposiciones reglamentarias tiene "como propósito evitar la

---

[27] *McNeil Healthcare v. Mun. Las Piedras I, supra*, pág. 404; *800 Ponce de León v. AIG, supra*.
[28] *Íd.*
[29] Regla 40 del Reglamento del Tribunal de Apelaciones, según enmendada, *In Re Aprob. Enmdas. Reglamento TA*, 2025 TSPR 141, pág. 63, 216 DPR ____ (2025). *Torres González v. Zaragoza Meléndez, supra*; *Rivera Figueroa v. Joe´s European Shop*, 183 DPR 580 (2011).
[30] *García v. Padró*, 165 DPR 324, 335 esc. 15 (2005).
[31] *Mun. Caguas v. JRO Construction, Inc.*, 201 DPR 703, 712 (2019).
[32] *Feliberty v. Soc. de Gananciales*, 147 DPR 834, 837 (1999).

dilación que causaría la revisión judicial de controversias que pueden esperar a ser planteadas a través del recurso de apelación."[33]

Finalmente, este Tribunal solo intervendrá con las determinaciones interlocutorias discrecionales procesales del tribunal sentenciador cuando este último haya incurrido en un craso abuso de discreción.[34] Esto es, "que el tribunal actuó con prejuicio o parcialidad, o que se equivocó en la interpretación o aplicación de cualquier norma procesal o de derecho sustantivo, y que nuestra intervención en esa etapa evitará un perjuicio sustancial".[35]

### - B - SENTENCIA SUMARIA

La *sentencia sumaria* es un mecanismo procesal disponible para adjudicar controversias sin la celebración de un juicio.[36] Su propósito o finalidad es propiciar la solución justa, rápida y económica de aquellos litigios civiles que no presentan controversias genuinas de hechos materiales, y en los cuales sólo resta dirimir una controversia de derecho.[37]

Este mecanismo se encuentra instituido en la Regla 36 de las de Procedimiento Civil de 2009.[38] Esta prescribe que cualquiera de las partes podrá presentar "una moción fundada en declaraciones juradas o en aquella evidencia que demuestre la inexistencia de una controversia sustancial de hechos esenciales y pertinentes, para que el tribunal dicte sentencia sumariamente a su favor sobre la totalidad o cualquier parte de la reclamación".[39]

Lo anterior implica que, la parte promovente debe demostrar que no existe *controversia sustancial* sobre algún hecho material, pues la *sentencia*

---

[33] *Scotiabank v. ZAF Corp. et al.*, 202 DPR 478, 486– 487 (2019); *Mun. Caguas v. JRO Construction Inc., supra.*

[34] *García v. Asociación*, 165 DPR 311, 322 (2005).

[35] *Lluch v. España Service Sta.*, 117 DPR 729, 745 (1986).

[36] *Birriel Colón v. Econo y otro*, 213 DPR 80 (2023); *Segarra Rivera v. Int'l. Shipping et al.*, 208 DPR 964, 979 (2022).

[37] *Negrón Castro y otros v. Soler Bernardini y otros*, 2025 TSPR 96, resuelto el 6 de octubre de 2025; *BPPR v. Zorrilla y otro*, 214 DPR 329, 338 (2024).

[38] 32 LPRA Ap. V, R. 36. *Negrón Castro y otros v. Soler Bernardini y otros, supra*; *Jiménez Soto y otros v. Carolina Catering Corp. y otros*, 2025 TSPR 3, resuelto el 14 de enero de 2025.

[39] 32 LPRA Ap. V, R. 36.1 y 36.2. *Acevedo y otros v. Dpto. Hacienda y otros*, 212 DPR 335 (2023).

*sumaria* solo debe dictarse en casos claros, cuando el tribunal tenga ante sí la verdad sobre todos los hechos pertinentes.[40] Un hecho material "es aquel que puede afectar el resultado de la reclamación de acuerdo con el derecho sustantivo aplicable".[41] De esta manera, la parte promovente debe desglosar los hechos en párrafos debidamente numerados y, para cada uno de ellos, debe especificar la página o el párrafo de la declaración jurada u otra prueba admisible en evidencia que lo apoya.[42] Entre la evidencia que puede presentar, están las siguientes: "certificaciones, documentos públicos, admisiones de la parte contraria, deposiciones, contestaciones a interrogatorios, declaraciones juradas o affidávits, y hasta prueba oral".[43]

Por su parte, quien se opone a que se dicte *sentencia sumaria* está obligado a controvertir la prueba presentada, contestando de forma detallada y específica aquellos hechos pertinentes para demostrar que existe una *controversia real y sustancial* que debe dilucidarse en juicio.[44] Para ello debe cumplir con los mismos requisitos con que tiene que cumplir la parte promovente, pero, además, su solicitud debe contener:

> [U]na relación concisa y organizada, con una referencia a los párrafos enumerados por la parte promovente, de los hechos esenciales y pertinentes que están realmente y de buena fe controvertidos, con indicación de los párrafos o las páginas de las declaraciones juradas u otra prueba admisible en evidencia donde se establecen los mismos, así como de cualquier otro documento admisible en evidencia que se encuentre en el expediente del

---

[40] *Oriental Bank v. Caballero García*, 212 DPR 671 (2023).

[41] *Serrano Picón v. Multinational Life Ins.*, 212 DPR 981 (2023).

[42] Regla 36.3(a) de las de Procedimiento Civil de 2009, *supra*; *SLG Zapata-Rivera v. J.F. Montalvo*, *supra*.

[43] *Acevedo y otros v. Depto. Hacienda y otros*, *supra*, citando a R. Hernández Colón, *Práctica Jurídica de Puerto Rico: Derecho Procesal Civil*, 6ta ed., San Juan, LexisNexis, 2017, pág. 318. Véase, además, la Regla 36.5 de las de Procedimiento Civil de 2009, 32 LPRA Ap. V, R. 36.5.

[44] *SLG Fernández-Bernal v. RAD-MAN et al.*, 208 DPR 310, 336 (2021); *Ramos Pérez v. Univisión*, 178 DPR 200, 214. (2010). La Regla 36.3 (b) de las de Procedimiento Civil de 2009 sobre la moción y procedimiento expone: La **contestación a la moción de sentencia sumaria** deberá ser presentada dentro del término de veinte (20) días de su notificación y deberá contener lo siguiente: (1) lo indicado en los subincisos (1), (2) y (3) del inciso anterior; (2) una relación concisa y organizada, con una referencia a los párrafos enumerados por la parte promovente, de los hechos esenciales y pertinentes que están realmente y de buena fe controvertidos, con indicación de los párrafos o las páginas de las declaraciones juradas u otra prueba admisible en evidencia donde se establecen estos hechos, así como de cualquier otro documento admisible en evidencia que se encuentre en el expediente del tribunal; (3) una enumeración de los hechos que no están en controversia, con indicación de los párrafos o las páginas de las declaraciones juradas u otra prueba admisible en evidencia donde se establecen estos hechos, así como de cualquier otro documento admisible en evidencia que se encuentre en el expediente del tribunal; (4) las razones por las cuales no debe ser dictada la sentencia, argumentando el derecho aplicable.

tribunal.[45]

Cuando se presente una moción de sentencia sumaria y se sostenga en la forma provista en esta Regla 36, la parte contraria no podrá descansar solamente en las aseveraciones o negaciones contenidas en sus alegaciones, sino que estará obligada a contestar en forma tan detallada y específica como lo haya hecho la parte promovente. De no hacerlo así, se dictará la sentencia sumaria en su contra si procede.[46]

De no hacerlo, la parte opositora corre el riesgo de que la solicitud de *sentencia sumaria* sea acogida por el tribunal y se resuelva en su contra.[47] "Como regla general, para derrotar una solicitud de sentencia sumaria la parte opositora debe presentar contradeclaraciones juradas y contradocumentos que pongan en controversia los hechos presentados por el promovente".[48] Es decir, no basta con presentar meras afirmaciones. Resulta insuficiente para derrotar una solicitud de *sentencia sumaria* una declaración jurada que meramente exponga conclusiones reiteradas de las alegaciones de la demanda y hechas sin conocimiento personal de los hechos.[49]

Al evaluar la procedencia de la solicitud de *sentencia sumaria* el tribunal **analizará los documentos que acompañan la moción de** *sentencia sumaria,* **los documentos incluidos con la moción en oposición y aquellos que obren en el expediente del tribunal**.[50] Por ello, "[t]oda inferencia que se haga a base de los hechos y documentos que obren en los autos, debe tomarse desde el punto de vista más favorable al que se opone a la solicitud de sentencia sumaria".[51] Más aún, el tribunal no tiene que considerar los hechos que no estén debidamente enumerados y no hagan referencia a los párrafos o páginas de las declaraciones juradas u otra prueba

---

[45] Regla 36.3(b)(2) y (c) de las de Procedimiento Civil de 2009, 32 LPRA Ap. V, R. 36.3(b)(2) y (c).

[46] Regla 36.3(b)(2) y (c) de las de Procedimiento Civil de 2009, 32 LPRA Ap. V, R. 36.3(b)(2) y (c).

[47] *Ramos Pérez v. Univisión, supra,* pág. 215.

[48] *Roldán Flores v. M. Cuebas et al.*, 199 DPR 664, 677 (2018); *S.L.G. Szendrey-Ramos v. Consejo de Titulares*, 184 DPR 133, 168 (2011); *Corp. Presiding Bishop CJC of LDS v. Purcell,* 117 DPR 714, 721 (1986).

[49] *Ramos Pérez v. Univisión*, *supra*, págs. 215-216.

[50] *PFZ Props., Inc. v. Gen. Acc. Ins. Co*., 136 DPR 881, 913 (1994). (énfasis nuestro).

[51] *E.L.A. v. Cole*, 164 DPR 608, 626 (2005); *Mgmt. Adm. Servs. Corp. v. E.L.A.*, 152 DPR 599, 610- 611 (2000).

admisible en evidencia donde se establezcan.[52] Tampoco tiene la obligación de considerar o apreciar cualquier declaración jurada o de otra prueba admisible en evidencia a la cual no se haya hecho referencia en la relación de hechos.[53] No obstante, será el análisis del derecho aplicable y de la existencia de alguna *controversia sustancial de hechos materiales* lo que determinará si procede dictar sentencia sumariamente, y no el que la parte contraria deje de oponerse a la solicitud, o lo haga defectuosamente.[54]

Es preciso subrayar que, "cualquier duda no es suficiente para derrotar una moción de sentencia sumaria; por el contrario, tiene que ser una duda que permita concluir que existe una controversia real y sustancial sobre hechos relevantes y pertinentes".[55] Por tanto, "[existe] una controversia real cuando la prueba ante el tribunal es de tal naturaleza que un juzgador racional de los hechos podría resolver a favor de la parte promovida".[56]

La parte promovente puede prevalecer por la vía sumaria si presenta prueba incontrovertible sobre todos los elementos indispensables de su causa de acción. En cambio, la parte promovida puede derrotar la moción de maneras diferentes: (1) si establece una controversia real de hechos sobre uno de los elementos de la causa de acción de la parte promovente; (2) si presenta prueba que apoye una defensa afirmativa; (3) si presenta prueba que establezca una controversia sobre la credibilidad de los testimonios jurados que presentó la parte promovente o (4) no proceda en cuestión de derecho.[57]

La Regla 36.4 de las de Procedimiento Civil de 2009 delimita las instancias en que el Tribunal de Primera Instancia está obligado a consignar en su dictamen los hechos materiales sobre los cuales no hay controversia, y cuáles hechos materiales halló controvertidos; a saber: (1) no se dicta *sentencia* sobre la totalidad del pleito; (2) no se concede todo el remedio

---

[52] Regla 36.3(d) de las de Procedimiento Civil de 2009, 32 LPRA Ap. V, R. 36.3(d). Véase, además, *SLG Zapata-Rivera v. J.F. Montalvo, supra*, pág. 433.
[53] *Íd.*
[54] *Ortiz v. Holsum*, 190 DPR 511, 525 (2014).
[55] *Ramos Pérez v. Univisión, supra*, pág. 214.
[56] *Íd.*
[57] *Íd.*, pág. 217.

solicitado; y (3) se deniega la moción de *sentencia sumaria*.[58] Estas tres (3) instancias conllevan la celebración de una audiencia en su fondo. En estos casos, la consignación en la *sentencia sumaria* de los hechos materiales sobre los cuales no hay controversia sustancial hace innecesario presentar evidencia o prueba sobre estos durante el juicio.[59] Del mismo modo, el tribunal puede dictar *sentencia sumaria* de naturaleza interlocutoria para resolver cualquier controversia que existe entre las partes y sea separable de las controversias restantes.[60]

Dicho esto, este Tribunal de Apelaciones se encuentra en la misma posición que el Tribunal de Primera Instancia al momento de revisar [denegaciones] o concesiones de mociones de *sentencia sumaria*.[61] Esto significa que, al evaluar la solicitud de *sentencia sumaria*, al igual que el foro primario, debemos aplicar los criterios de la Regla 36 de las de Procedimiento Civil de 2009 y su jurisprudencia interpretativa.[62] Ello supone examinar el expediente de la manera más favorable hacia la parte que se opuso a la solicitud de *sentencia sumaria*, llevando a cabo todas las inferencias permisibles a su favor.[63] Como resultado, tenemos el deber de revisar que tanto la moción de *sentencia sumaria* como su oposición cumplan con los

---

[58] 32 LPRA Ap. V, R. 36.4. **Regla 36.4. Pleito no decidido en virtud de moción**: Si en virtud de una moción presentada bajo las disposiciones de esta regla no se dicta sentencia sobre la totalidad del pleito, ni se concede todo el remedio solicitado o se deniega la misma, y es necesario celebrar juicio, será obligatorio que el tribunal resuelva la moción mediante una determinación de los hechos esenciales y pertinentes sobre los cuales no hay controversia sustancial y los hechos esenciales y pertinentes que están realmente y de buena fe controvertidos, y hasta qué extremo la cuantía de los daños u otra reparación no está en controversia, ordenando los procedimientos ulteriores que sean justos en el pleito, incluso una vista evidenciaria limitada a los asuntos en controversia. Al celebrarse el juicio, se considerarán probados los hechos así especificados y se procederá de conformidad. A base de las determinaciones realizadas en virtud de esta regla el tribunal dictará los correspondientes remedios, si alguno. *Pérez Vargas v. Office Depot,* 203 DPR 687, 697 (2019).
[59] *Íd.*
[60] 32 LPRA Ap. V, R. 36.3(e): "El tribunal podrá dictar sentencia sumaria de naturaleza interlocutoria para resolver cualquier controversia entre cualesquiera partes que sea separable de las controversias Reglas de Procedimiento Civil de Puerto Rico 55 restantes. Dicha sentencia podrá dictarse a favor o contra cualquier parte en el pleito".
[61] *Rosado Reyes v. Global Healthcare*, 205 DPR 796, 809 (2020); *Rivera Matos et al. v. Triple-S et al.,* 204 DPR 1010, 1025 (2020); *Meléndez González et al. v. M. Cuebas, supra,* pág. 118.
[62] *Rosado Reyes v. Global Healthcare Group, LLC,* 205 DPR 796, 809 (2020); *Meléndez González v. M. Cuebas, Inc.,* supra, pág. 118.
[63] *Birriel Colón v. Supermercado Los Colobos, supra*; *Rosado Reyes v. Global Healthcare*, 205 DPR 796, 809 (2020); *Meléndez González v. M. Cuebas, Inc., supra*.

requisitos de forma instituidos en la Regla 36 de las de Procedimiento Civil de 2009.[64]

En esencia, si el foro primario **acogió la moción** y dictó sentencia sumariamente, nos corresponderá revisar si en realidad existen hechos materiales en controversia.[65] De existir, procederemos entonces a cumplir con la Regla 36.4 de las de Procedimiento Civil de 2009 exponiendo concretamente cuáles hechos hallamos que están en controversia y cuáles están incontrovertidos. Puede hacerse en la decisión en la cual se disponga del caso y hacer referencia al listado enumerado de hechos incontrovertidos dispuestos por el foro recurrido. Si determinamos que los hechos materiales realmente están incontrovertidos, se procederá a revisar *de novo* si el Tribunal de Primera Instancia adjudicó correctamente el derecho a la controversia.

En palabras sencillas, los tribunales revisores estamos limitados a: (1) considerar los documentos que se presentaron ante el foro de instancia; (2) determinar si existe o no alguna controversia genuina de hechos materiales y esenciales; y (3) comprobar si el derecho se aplicó de forma correcta.[66]

### - C – *DERECHO INMOBILIARIO REGISTRAL*

La norma implanta que la inscripción es declarativa debido a que "los derechos reales sobre inmuebles se constituyen, modifican, transmiten o extinguen, con eficacia jurídica, fuera del Registro [de la Propiedad] en virtud de la aplicación de las normas del Derecho civil".[67] A modo de excepción, existen casos, como son las *hipotecas*, en que es necesaria la inscripción para que se constituya el derecho real.[68] "Ello se debe a que es mediante la

---

[64] *Birriel Colón v. Supermercado Los Colobos, supra.*
[65] *Rivera Matos et al. v. Triple S et al., supra.*
[66] *Birriel Colón v. Supermercado Los Colobos, supra*, pág. 5; *Meléndez González et al. v. M. Cuebas, supra*, págs. 114-116.
[67] L.R. Rivera Rivera, *Derecho Registral Inmobiliario Puertorriqueño*, 3ra. ed., San Juan, Jurídica Editores, 2012, pág. 42.
[68] *DLJ Mortgage v. García Ramos*, 207 DPR 28, 55 (2021).

inscripción, como acto constitutivo, que 'la garantía produce efectos reales y adviene eficaz *erga omnes* al ámbito de los derechos reales [...]'".[69]

En nuestro ordenamiento jurídico, la *hipoteca* es un derecho real, de naturaleza accesoria, indivisible, y de naturaleza constitutiva.[70] Dicho de otra manera, para que surta efectos, es indispensable que la *hipoteca* conste en escritura pública y se inscriba ante el Registro de la Propiedad.[71] Efectivamente, el principio de prioridad permite conocer el orden de rango preferente que tendrán las hipotecas inscritas según fueron presentadas ante el Registro de la Propiedad.

Dicho eso, también es importante reconocer que existe la posibilidad de hallar **discordancia entre los hechos registrales y la realidad extra registral**, lo que causa la existencia de inexactitudes registrales, las cuales pueden ser rectificadas.[72] El Máximo Foro ha reconocido: "que, en nuestra jurisdicción, el titular del dominio o derecho real que no esté inscrito, que lo esté erróneamente, o que resulte lesionado por el asiento inexacto puede solicitar la rectificación del Registro".[73] Al rectificar la inexactitud registral, se provoca la asignación del respectivo asiento de inscripción o de cualquier otra clase, sin perjudicar derechos legítimamente adquiridos por un tercero.[74] Así pues, quien no desee que prevalezca el contenido registral inexacto puede "obtener la rectificación o corrección del Registro, poniéndolo de acuerdo con la realidad jurídica mediante la efectuación de las correspondientes operaciones en los libros registrales".[75] Después de todo, **la presunción de corrección que le asiste a los derechos inscritos en el Registro de la**

---

[69] *SLG Haedo-López v. SLG Roldan-Rodríguez,* 203 DPR 324, 342 (2019) (citando a Rivera Rivera, op. cit., pág. 487).
[70] *Westernbank v. Registradora,* 174 DPR 779, 784 (2008).
[71] Artículo 1774 del Código Civil de Puerto Rico, 31 LPRA ante § 5042.
[72] Véase el entonces vigente Artículo 110 de la Ley Hipotecaria y del Registro de la Propiedad, 30 LPRA ante § 2360. (énfasis nuestro).
[73] *Dist. Unidos Gas v. Sucn. Declet Jiménez,* 196 DPR 96, 119 (2016).
[74] *Íd.*
[75] *Íd.*, págs. 119- 120.

**Propiedad admite prueba en contrario**, proceso en el cual los tribunales están llamados a intervenir.[76]

La *Ley Hipotecaria* codifica y define el derecho de superficie, figura esencial en el caso que nos ocupa. Específicamente, la aludida legislación dispone:

> El derecho de superficie es un derecho real que faculta a una persona, denominada superficiario, a construir sobre el suelo, subsuelo o vuelo de una finca o sobre una **edificación existente perteneciente a otra persona**, denominado superficiante. **El derecho de superficie crea un gravamen sobre la finca principal**. Una vez construida la edificación, esta se inscribirá como una finca nueva independiente. En caso de que el derecho se conceda sobre una edificación existente, deberá constar inscrita o solicitarse inscripción en virtud de una declaración de obra nueva.[77]

Del mismo modo, el estatuto tipifica que: "[e]l derecho de superficie puede ser constituido por el superficiante, **con el consentimiento** de cualquier arrendatario o usufructuario del inmueble o parte del mismo sobre la cual se vaya a conceder el derecho de superficie."[78] En pocas palabras, el derecho de superficie crea un gravamen sobre la propiedad existente y para ganar acceso al Registro de la Propiedad debe contar con el consentimiento del arrendatario o usufructuario del inmueble en cuestión.

- III –

**KLCE202400526**

El señor **COTTO JOVET** y la **SUCN. GONZÁLEZ** apuntalan, en síntesis, que el foro primario erró: (i) al determinar que los esposos Cotto-González[,] ahora Sucesión González[,] conocían y no le advirtieron al demandante que existía un derecho de superficie en el inmueble objeto del presente caso, [aun] cuando el propio foro de instancia valida la controversia viva sin

---

[76] A todos los efectos legales se **presumirá** que los derechos publicados en el asiento de inscripción de cada finca existen y pertenecen a su titular en la forma determinada por el asiento respectivo. De la misma manera, se presumirá que quien tenga inscrito a su favor el dominio de los inmuebles o derechos reales tiene la posesión de estos. Véase Art. 34 de la Ley Núm. 210-2015, 30 LPRA § 6049. (énfasis nuestro).

[77] 30 LPRA § 6261.

[78] 30 LPRA § 6264. Véase, además: A.C Gómez Pérez & L.I Quintana Llorens: *La Hipoteca en el Derecho Inmobiliario Registral Puertorriqueño*, Editorial Temis S.A. Bogotá, Colombia, págs. 56– 57, (2021).

resolver sobre ese mismo punto (página 16 cuarto párrafo de la *Resolución* recurrida[)]; (ii) al hacer las determinaciones de derecho número siete (7); nueve (9); y veinticuatro (24) reconociendo que existía controversias sobre los mismos; (iii) al hacer determinaciones de hechos y derecho sobre los que el propio foro de instancia reconoce que existe controversia (Sección III) de la Resolución; (iv) al señalar que todas las partes estaban regidas por el principio de publicidad del Registro de la Propiedad y solamente determina, arbitrariamente, responsabilidad a los esposos Cotto-González y excusa solamente al demandante por ser lego; y (v) al señalar que no existían partes indispensables que traer al pleito, ver *Resolución* recurrida a la página 20 último párrafo.

Arguyen que fueron engañados por el Banco Popular de Puerto Rico (BPPR), toda vez que, no les previno sobre el derecho de superficie que grava la segunda planta de la propiedad. Razón por la cual, requirieron traer a BPPR como tercero demandado.[79] Hacen hincapié en que el señor MORENO JIMÉNEZ debió percatarse que estaba adquiriendo una propiedad con dos (2) unidades independientemente de la descripción de la propiedad en la Escritura basada en el *Estudio de Título* realizado por CAPITAL TITLE. Toda vez que, así surge de la *Declaración de Cierre* (*Closing Disclosure* o "*Settement*") fechado 29 de julio de 2019, que le fuese entregado antes del cierre, que hace mención de la certificación de cuota de mantenimiento de la Asociación de Residentes de 27 de julio de 2019 y las dos (2) deudas por los impuestos de la propiedad (CRIM).[80] Puntean que el señor MORENO JIMÉNEZ visitó e inspeccionó detalladamente las dos (2) viviendas y estaba al tanto de los dos (2) niveles.

---

[79] A la Escritura sobre *Primera Hipoteca* otorgada el 24 de septiembre de 2003 ante la notario Corally Veguilla Torres comparecieron las señoras Vivian Rosalie Isern Suárez y Nélida Cardona Cardona, titular del derecho de superficie, a los efectos de consentir que su derecho quedara en su totalidad gravado en ese acto. Este dato fue compartido por CAPITAL TITLE como parte del descubierto de prueba. Entrada núm. 248, Anejo 3, del expediente electrónico del Sistema Unificado de Manejo y Administración de Casos (SUMAC-TPI).

[80] Entrada núm. 1, Anejos 3 y 4, del expediente electrónico del Sistema Unificado de Manejo y Administración de Casos (SUMAC-TPI).

Por su lado, el señor **MORENO JIMÉNEZ** propone que de un análisis de la *Declaración de Cierre* (*Closing Disclosure* o "*Settement*") no surge que la estructura estuviese gravada por un derecho de superficie y tiene dos (2) cuentas del CRIM; y **FIRSTBANK** tenía la obligación de notificar sobre el derecho de superficie. Refiere que el señor **COTTO JOVET** y la **SUCN. GONZÁLEZ** incumplieron crasamente con las disposiciones de la Regla 36.3 de las de Procedimiento Civil de 2009. Enuncia, además, que todas las partes demandadas tenían la obligación de divulgar la existencia del derecho de superficie, no lo hicieron y ello ocasionó que su consentimiento esté viciado. Finaliza su escrito, infiriendo que todas las partes demandadas participaron en provocar y permitir un consentimiento viciado, al no informarle de la existencia de un derecho de superficie en la propiedad, por ende, responden solidariamente a sus reclamaciones.

### *KLCE202400631*

**FIRSTBANK** afirma que contrató a **CAPITAL TITLE** para que ejecutara un estudio de título del inmueble sito en 19P de la Urbanización Acrópolis en Guaynabo, Puerto Rico. Así, relata que por ser un préstamo FHA regulado por el US Department of Housing and Urban Development tiene el deber de obtener un estudio de título y requerir una póliza de seguro de título a favor del acreedor.[81] Abona que **CAPITAL TITLE** es un contratista independiente y, **FIRSTBANK** no responde por sus omisiones o errores rutinarios. Discute que un estudio de título está asegurado por la póliza de título. Ante el requerimiento del señor **MORENO JIMÉNEZ**, **CAPITAL TITLE** presentó su segundo *Estudio de Título*.[82] Acredita que el 25 de octubre de 2019, efectuó una reclamación formal por omisión de información sobre el derecho de superficie en el estudio de título. Expresa que el señor **MORENO JIMÉNEZ** no cuenta con prueba alguna para demostrar que: (1) el estudio de título es una

---

[81] Entrada núm. 1, Anejo 3, del expediente electrónico del Sistema Unificado de Manejo y Administración de Casos (SUMAC-TPI).

[82] Apéndice del *Certiorari* (**KLCE202400631**), págs. 154-157.

actividad inherentemente peligrosa; (2) por ser inherentemente peligrosa, requería advertencias o precauciones especiales; y (3) **FIRSTBANK** falló en ofrecer tales advertencias o tomar precauciones especiales. En esa misma dirección, reafirma que resulta inverosímil responder por acciones negligentes incididas por un contratista independiente.

Al contrario, el señor **MORENO JIMÉNEZ** denota que en la deposición de la señora Marline Reyes Hernández, procesadora de préstamos hipotecarios en **FIRSTBANK,** admitió que es normal que los estudios de título tengan incongruencias y evalúan todos los documentos en el expediente para asegurarse que la propiedad colateral esté limpia de gravámenes.[83]

Como cuestión de umbral, precisa señalar que, a tenor con la normativa atinente a la revisión de *sentencia sumaria*, y luego de evaluar concienzudamente los respectivos escritos presentados, hallamos que la *Oposición a Solicitud de Sentencia Sumaria y Otros Extremos* presentada el 13 de junio de 2023 por el señor **COTTO JOVET** y la **SUCN. GONZÁLEZ BÁEZ;** y la *Moción en Relación a Sentencia Sumaria de FirstBank* presentada el 29 de junio de 2023 por el señor **MORENO JIMÉNEZ** no cumplen con los requisitos de forma estatuidos en la Regla 36 de las de Procedimiento Civil de 2009. Esto es, aun cuando el señor **COTTO JOVET** y la **SUCN. GONZÁLEZ** hicieron una lista de las controversias; no contestaron de forma detallada y especifica aquellos hechos pertinentes para demostrar que existe una *controversia real y sustancial* que debe dilucidarse en un juicio. Tampoco hicieron referencia a

---

[83] Nos llama la atención que el señor **MORENO JIMÉNEZ** refiere su desconocimiento sobre las incongruencias. Al revisar la documentación que le fuese entregada por **FIRSTBANK** para su revisión y/o firma surgen estas inconsistencias: (i) el señor **MORENO JIMÉNEZ** visitó el inmueble; (ii) *Appraisal of Real Property* (Tasación) de 2 de julio de 2019- aduce que se evaluaron las dos (2) unidades o residencias; (iii) *Uniform Residential Loan Application* (Solicitud de Préstamo) hace mención de dos (2) unidades; (iv) la *Declaración de Cierre* (*Closing Disclosure* o "*Settement*") fechado 29 de julio de 2019 alude a la certificación de cuota de mantenimiento de la Asociación de Residentes de 27 de julio de 2019 y las dos (2) deudas por los impuestos de la propiedad (CRIM); (v) la escritura sobre *Compraventa* expresa: "*En este solar se ha construido una casa de concreto con fines residenciales de una sola planta y que consta principalmente de sala-comedor, tres dormitorios, baño, cocina y marquesina....Leída esta escritura por los comparecientes, en la misma se ratifican, fijan sus iniciales en todas y cada uno de los folios de este documento y la firman ante mí, el Notario, quien de todo lo consignado anteriormente, DOY FE*" y éste no hizo expresión alguna al Notario para clarificar sus dudas, si alguna, sobre la propiedad.

los párrafos o las páginas de las declaraciones juradas o cualquier otra prueba admisible en evidencia que estableciera tales hechos, tal y como lo exige la Regla 36.3 de las de Procedimiento Civil de 2009. Ello, sin embargo, no dispone sin más de la controversia ante nuestra consideración.

Es nuestro deber revisar si el foro *a quo* aplicó correctamente el derecho al asunto que nos ocupa. Resolvemos en la negativa. Indudablemente aún existen dudas en torno a quien tiene responsabilidad, si alguna. Si bien es cierto que declaró no ha lugar la *Moción de Sentencia Sumaria Parcial* presentada el 8 de junio de 2023 por el señor **MORENO JIMÉNEZ** y la *Moción de Sentencia Sumaria* presentada el 12 de junio de 2023 por **FIRSTBANK,** por entender que **FIRSTBANK** y/o los esposos **COTTO-GONZÁLEZ** fueron negligentes, su *Resolución* es incorrecta.

Precisamos que el tribunal primario debió requerir una *Certificación Registral* del Registro de la Propiedad para conocer o comprender la realidad registral del inmueble y el derecho de superficie. Toda vez que, emana de los *Estudios de Título* efectuados por **CAPITAL TITLE** que aún estaba pendiente de calificarse la Escritura Núm. 199 otorgada en San Juan, Puerto Rico, el 30 de octubre de 2017 suscrito por Banco Popular de Puerto Rico y el matrimonio **COTTO-GONZÁLEZ.**[84] No podía meramente determinar, a base de información que no constaba, que alguna de las partes incurrió en un acto o acción negligente. Así, el foro primario no podía decidir si disponía del recurso por la vía sumaria o no hasta tanto tuviese todos los criterios necesarios ante su consideración. Esto es, es ***prematuro*** el ruego de sentencia sumaria hasta tanto en cuanto el Registrador haya calificado el instrumento público antedicho y se certifique cual es la realidad registral de la propiedad.[85] En definitiva, colegimos que el tribunal primario erró y abusó de su discreción,

---

[84] Apéndice del *Certiorari* (**KLCE202400631**), págs. 265-266 y 302-303.
[85] Tal ejercicio consiste en examinar o comprobar la legalidad de aquello cuya inscripción en el Registro de la Propiedad. L.R. Rivera Rivera, Derecho Registral Inmobiliario Puertorriqueño, 3ra ed., San Juan, Jurídica Eds., 2012, pág. 275.

cometió perjuicio y error manifiesto. En conclusión, incidió los errores señalados.

### - IV -

Por los fundamentos antes expuestos, ***expedimos*** el auto de *Certiorari* a los fines de ***revocar*** la *Resolución* dictaminada el 12 de abril de 2024 por el Tribunal de Primera Instancia, Sala Superior de Bayamón. En consecuencia, se ordena la continuación de los procedimientos. Al amparo de la Regla 35 (A)(1) de nuestro Reglamento, el Tribunal de Primera Instancia puede proceder de conformidad con lo aquí resuelto, sin tener que esperar por el recibo de nuestro mandato.[86]

**Notifíquese inmediatamente**.

Lo acordó el Tribunal y lo certifica la Secretaría del Tribunal de Apelaciones.

La Jueza Lebrón Nieves concurre con el resultado sin opinión escrita.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones

---

[86] Regla 35 (A)(1): "La presentación de una solicitud de *certiorari* no suspenderá los procedimientos ante el Tribunal de Primera Instancia, salvo una orden en contrario expedida por iniciativa propia o a solicitud de parte por el Tribunal de Apelaciones. La expedición del auto de *certiorari* suspenderá los procedimientos en el Tribunal de Primera Instancia, **salvo que el Tribunal de Apelaciones disponga lo contrario**." Véase la Regla 35 (A)(1) del Reglamento del Tribunal de Apelaciones, según enmendada, *In Re Aprob. Enmdas. Reglamento TA*, 2025 TSPR 141, pág. 58, 216 DPR ____ (2025).